IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 1, 2024

## KIRSTEN WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
No. C-23-133      Donald H. Allen, Judge
_____

### No. W2024-00578-CCA-R3-PC
_____

Kirsten Williams, Petitioner, was convicted of aggravated assault, aggravated kidnapping, and aggravated burglary in a joint trial with a co-defendant. *State v. Williams*, No. W2021-01071-CCA-R3-CD, 2022 WL 17728221, at *1 (Tenn. Crim. App. Dec. 16, 2022), *no perm. app. filed*. Petitioner was sentenced to 15 years in incarceration at 100 percent service rate. Petitioner's convictions were affirmed on direct appeal. *Id.* Petitioner sought post-conviction relief based on ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and MATTHEW J. WILSON, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Kirsten Williams.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Madison County Grand Jury indicted Petitioner and co-defendant Ajia Hewlett for the aggravated assault, aggravated kidnapping, and aggravated burglary of Petitioner's neighbor, Melanie Page. *Id.* Petitioner was also indicted for tampering with evidence and possession of a handgun by a convicted felon. *Id.* The proof at trial showed that Petitioner

lived on one side of a duplex with the co-defendant, and the victim, along with another individual, lived on the other side. *Id.* Petitioner and the co-defendant entered the victim's residence with permission where they assaulted her, threatened her with a weapon, and forced the victim to go to their side of the duplex where they forced her to clean their home. *Id.* at *2. Petitioner and the co-defendant continued to beat the victim and held her captive for approximately 12 hours before she escaped. *Id.* The co-defendant and the victim testified at trial and were questioned on cross-examination by trial counsel.

The trial court dismissed the handgun charge in response to a motion for judgment of acquittal. *Id.* at *4. The jury acquitted Petitioner of tampering with evidence. *Id.* at *1. Petitioner was convicted of all other offenses as charged and sentenced to 15 years' incarceration at 100 percent. *Id.*

On direct appeal, Petitioner challenged the sufficiency of the evidence supporting her convictions. *Id.* at *6. This Court affirmed her convictions. *Id.*

Petitioner filed a pro se petition for post-conviction relief alleging ineffective assistance of counsel. Specifically, Petitioner alleged that trial counsel was ineffective for failing to: (1) have an investigator interview the victim; (2) conduct a thorough and appropriate pre-trial investigation; (3) interview the co-defendant prior to trial; (4) enter into meaningful plea negotiations with the State; (5) argue the discrepancies between the assault charges against Petitioner and the co-defendant; and (6) argue the discrepancies between the kidnapping charges against Petitioner and the co-defendant. The post-conviction court determined that the petition stated a colorable claim; post-conviction counsel was appointed, and the post-conviction court held a hearing on the petition.

At the hearing, trial counsel testified that he was appointed to represent Petitioner at trial. Petitioner was on bond, so she came to trial counsel's office to meet and go over discovery materials. They met at his office several times. Trial counsel suspected Petitioner was "under the influence of some type of drug" during some of these meetings. Petitioner did not think the victim would show up at trial.

Trial counsel questioned the co-defendant at trial. At the post-conviction hearing, trial counsel explained that if the co-defendant had a prior criminal history he would have questioned her about it unless it was trial strategy.

Trial counsel recalled plea negotiations with the State. He testified that if an offer was conveyed, "it would have been relayed to [Petitioner]." Trial counsel recalled that "she was not willing to accept any plea because . . . she said that she did not do these things." Trial counsel did not recall whether there was a plea offer in this case.

Trial counsel did not recall if the victim had any prior impeachable convictions but testified that if she "had any" he would have "asked about [them] at trial." Trial counsel clarified that there could be a situation where it strategically would not be wise to ask a victim about prior offenses, for example, if it looked like counsel was going to "badger the witness and try to essentially point blame at the victim." Trial counsel testified that if the victim had prior crimes of dishonesty and he did not bring them up it on cross-examination, it would have been trial strategy.

Trial counsel spoke with a potential witness but decided not to call that witness at trial. The witness gave information that would have supported part of the State's case, and trial counsel did not think the testimony benefitted Petitioner.

Trial counsel remembered that the "whole standpoint at trial was that [Petitioner] did not do any of [the actions alleged] . . . and that the level of injuries did not arise to that of aggravated assault." Trial counsel also argued at trial that the victim was invited over to Petitioner's side of the duplex so there was no kidnapping. Trial counsel explained the jury acquitted Petitioner of tampering with the evidence and opined that he "conducted [him]self correctly in the initial trial." Trial counsel also explained that he was successful on a motion for judgment of acquittal on the handgun charge. Trial counsel also successfully argued against consecutive sentencing.

Trial counsel filed the motion for new trial but did not represent Petitioner in the direct appeal. He challenged the sufficiency of the evidence and sentencing in the motion for new trial.

Petitioner testified that she "did not" do all of the "things" alleged in the indictment. She claimed that she met with trial counsel "[m]aybe once or twice" for about "[t]en minutes a piece" but denied looking at discovery. She testified that she did not receive a copy of the discovery materials. She did not understand that she could ask for a copy of the materials. On cross-examination, Petitioner admitted that trial counsel gave her a copy of "motions" and handed her discovery "in court" but did not "go over it" with her at any time.

During these brief meetings, Petitioner told trial counsel she "didn't do it." She claimed that she did not know that trial counsel interviewed another witness and that she did not know to whom trial counsel spoke. Petitioner thought that trial counsel should have impeached the victim with comments the victim made on Petitioner's Facebook page. According to Petitioner, the victim testified during trial that she had not contacted Petitioner since the incident. Petitioner claimed she "showed [trial counsel] a printout on Facebook where [the victim] was talking with me and he wouldn't show it." Petitioner also claimed the victim "commented on my [Facebook] photo and said I was beautiful."

Petitioner testified that she believed that if the Facebook printout had been shown to the jury by trial counsel, the jury would have been able to determine that the victim was not truthful about not having contacted Petitioner.

Petitioner testified that trial counsel should have researched whether the co-defendant and the victim had prior offenses.

Petitioner conceded that trial counsel discussed the range of sentences for her but that he told her she might serve "[u]p to 85 percent," not 100 percent. Petitioner admitted that she did not ask trial counsel about a plea offer and that trial counsel "never said anything . . . about an offer" but that Petitioner "would have taken less than 15 years at 100." Petitioner testified she wanted to go to trial because she did not commit the crimes but admitted on cross-examination that she committed aggravated assault. Petitioner also admitted on cross-examination that she had several prior convictions and had entered a guilty plea in at least one of those cases.

The post-conviction court entered an order denying post-conviction relief. The post-conviction court incorporated a separate letter outlining its ruling into the order denying relief. Specifically, the post-conviction court accredited the testimony of trial counsel. The post-conviction court did not credit Petitioner's testimony that her trial counsel "was ineffective in his representation of [Petitioner], or that the Court erred in allowing the victim's testimony at trial." The post-conviction court found that it was no surprise that the victim testified at trial. The post-conviction court determined that Petitioner failed to prove that trial counsel was deficient or that she was prejudiced by trial counsel's representation.

Petitioner filed an untimely notice of appeal. This Court waived the timely filing.

*Analysis*

On appeal, Petitioner complains that the post-conviction court improperly denied her petition for post-conviction relief. Specifically, Petitioner complains trial counsel was ineffective because he did not "effectively attempt to impeach the [v]ictim" and co-defendant and failed to enter into meaningful plea negotiations. The State insists that Petitioner is not entitled to relief.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those

findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Petitioner first argues that trial counsel was ineffective for failing to adequately impeach the victim with her prior record or printouts from Facebook that would have contradicted the victim's trial testimony. Trial counsel testified that any decision he made with regard to questioning the victim about her prior record was trial strategy based on his concern about how the jury would perceive the victim. Moreover, Petitioner did not introduce any evidence at the post-conviction hearing to show that the victim even had a prior criminal record and did not introduce evidence of Facebook printouts. Neither the post-conviction court nor this Court will speculate what a witness would have said or what the evidence otherwise would have shown. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). The record does not preponderate against the post-conviction court's conclusion that Petitioner failed to show prejudice on this basis.

As to Petitioner's argument on appeal that trial counsel was ineffective for failing to adequately impeach the co-defendant at trial, it is waived. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument . . . will be treated as waived in this court."). Petitioner's entire argument on this issue is that trial counsel's cross-examination of co-defendant "lasted for less than five (5) minutes total."

Finally, Petitioner argues that trial counsel was ineffective for failing to enter into meaningful plea negotiations with the State. Trial counsel testified that he attempted plea negotiations but that the State did not make an acceptable offer. Petitioner did not establish prejudice because she failed to prove that but for trial counsel's deficiency she would have

accepted the plea offer, that the prosecution would not have withdrawn the offer, and that the trial court would have accepted the offer and imposed a less severe penalty than was imposed. *See Nesbit v. State*, 452 S.W.3d 779, 800-01 (Tenn. 2014) (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). In fact, there was no proof in the record that the State ever made a plea offer, and Petitioner herself testified that she would not have pled guilty to a crime she did not commit. The evidence does not preponderate against the post-conviction court's conclusion that Petitioner failed to show prejudice on this basis.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE